PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BRADLEY, | ) | |
| | ) | CASE NO.  4:12CV00890 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| JACK M. RENO, Jr., *et al.*, | ) | **MEMORANDUM** |
| | ) | **OF OPINION AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 53] |

Pending is a Motion for Summary Judgment (ECF No. 53) filed on behalf of law

enforcement officers–Defendants Jack M. Reno, David S. Dobbins and Timothy J.

Timberlake–involved in the arrest of Plaintiff Michael Bradley.  The Court has been advised,

having reviewed the record, including a video of the events leading up to the arrest, the parties'

briefs and the applicable law.  For the reasons provided below, the Court finds that Defendants

are entitled to summary judgment on the basis of qualified immunity, as no genuine issues of

material fact exist regarding whether there was probable cause to arrest Plaintiff.

## I.  Factual Background

Plaintiff worked as a truck driver.  ECF No. 53-4 at 9.  While working one evening,

Plaintiff consumed chicken and two "small" pitchers of beer and two bottles of beer while

watching movies for "almost three hours" at a Truck World Truck Stop.  *Id.* at 36-38, 40.

Plaintiff left Truck World, entered his truck, and decided to drive to another truck stop.  *Id.* at 46.

 10 to 15 minutes after his departure, however, Plaintiff pulled over just inside the shoulder of a

(4:12CV890)

westbound on-ramp to the interstate because he had taken a wrong turn; "didn't think [he] should be on the road"; and desired to "take a break before anything gets out of hand." *Id.* at 53-55. Plaintiff acknowledged that the alcohol he had consumed that evening had made him feel tired. *Id.* at 107.  He also acknowledged that the other truck stop was "not far at all" from where he had stopped his truck on the shoulder of the interstate.  ECF No. 53-4 at 52.

At 10:25 p.m., while on duty, Defendant Trooper Jack M. Reno, Jr. observed Plaintiff's truck on the shoulder of the on-ramp.  ECF No. 53-2 at 49.  Because there were no safety triangles placed next to the truck and because the truck's lights were on, Trooper Reno pulled up behind it and decided to check on the status of the driver.  *Id.*  The truck was parked close to the white line which separated the highway lane from the shoulder.  ECF No. 54 at 22:24:11, 22:24:24.[1]  Plaintiff's keys were in the ignition and the engine remained running in a parked gear. ECF No. 53-2 at 57-58.  After Trooper Reno knocked on the truck driver's side door, Plaintiff came from behind a curtain separating the sleeping berth from the driving cab.  *Id.* at 65. Plaintiff testified that there had been no one else in the truck that evening.  53-4 at 66.  At Trooper Reno's command, Plaintiff left the sleeping berth, approached the driver's window, and kneeled in the driver's seat to communicate with Trooper Reno.  ECF No. 53-4 at 66.  Plaintiff testified that his breath smelled of alcohol.  *Id.* at 71.  Plaintiff told Trooper Reno that he had been drinking and he eventually admitted to consuming the two pitchers of beer and two bottles

---

[1]

  A recording of Plaintiff's Operating a Vehicle under the Influence ("OVI") investigation and arrest was taken by Trooper Reno's dashboard camera and submitted to the Court as a certified DVD in support of Defendants' motion for summary judgment.  Citations to the DVD also reflect a time stamp.  *See* ECF No. 54.

2

(4:12CV890)

of beer right before he drove to the location on the on-ramp. ECF No. 53-4 at 68-69, 74, 91.

Trooper Reno testified that Plaintiff slurred when he spoke. ECF No. 53-2 at 62. Trooper Reno

asked Plaintiff to exit the vehicle and remarked that Plaintiff "swayed" when he walked, as

exhibited by the video recording made at the time. ECF No. 53-2 at 66; ECF No. 54 at 22:26:50-

22:26:55. Plaintiff performed field sobriety tests at Trooper Reno's command and, while

watching the video recording of these tests during his deposition, admitted to (1) losing his

balance several times and (2) walking instead of doing the requested One-Leg Stand test. ECF

No. 53-4 at 72-74. Trooper Reno also administered the Horizontal Gaze Nystagmus test (eye

test) on which Trooper Reno testified that Plaintiff performed poorly. ECF No. 53-2 at 68-69.

After his poor performance on the field sobriety tests, Trooper Reno placed Plaintiff under arrest.

*Id.*

 Sergeant Timothy J. Timberlake arrived at the scene and Trooper Reno discussed the

situation with him before administering the field sobriety tests to Plaintiff. ECF No. 53-2 at 67,

69. Trooper Timothy S. Dobbins arrived at the scene and performed the vehicle inventory of the

truck. *Id.* at 71. Although they did not participate in the ultimate decision to arrest Plaintiff,

Sergeant Timberlake and Trooper Dobbins provided backup for Trooper Reno. ECF No. 53-8 at

29.

 After his arrest and upon arriving at the police station, Plaintiff took a breathalyzer test

that registered a Blood Alcohol Content ("BAC") reading of .111 grams per 210 liters. ECF No.

53-4 at 106-07. The legal BAC limit for operating a regular motor vehicle is .08. R.C. §

4511.19(A)(1)(d). The legal BAC limit for operating a commercial vehicle is .04. R.C. §

3

(4:12CV890)

4506.15(A)(2).  Plaintiff was charged with violating R.C. § 4511.19(A)(1)(d), R.C. § 4506.15(A)(2), and two other statutes: R.C. § 4511.19(A)(1)(a) (operating a vehicle under the influence of alcohol), and R.C. § 4511.12 (failure to obey traffic control devices).  Plaintiff moved to suppress the charges and evidence obtained as a result of the arrest.  ECF No. 14-1.  A state court suppressed both the operation of a vehicle under the influence charge and the operation of a regular vehicle with a BAC in excess of 0.08 charge, but the court allowed the remaining two charges to proceed for prosecution.  ECF No. 14-3.  At trial, Plaintiff was found not guilty of the remaining charges.  ECF Nos. 21-1, 23-1.

## II.  Procedural Background

Plaintiff commenced this civil action, alleging a violation of his federal civil rights under 42 U.S.C. § 1983 for an unlawful arrest and common law claims of malicious prosecution and false imprisonment.  ECF No. 1.  In an earlier ruling, the Court granted Defendants' motion to dismiss the state law claims, malicious prosecution and false imprisonment, for want of jurisdiction.[2]  ECF No. 5.  Later, the Court granted Defendants' first motion for summary judgment.  ECF No. 42.  Plaintiff appealed that ruling and the Sixth Circuit vacated and remanded.[3]  ECF No. 50.  Now, Defendants move for summary judgment on the ground of

---

[2]

Plaintiff did not challenge the dismissal within the requisite time.  Therefore, any and all such attempts (such as in Plaintiff's opposition to Defendants' motion for summary judgment) to belatedly object to that ruling are stricken.  The sole remaining claim and the claim resolved by this ruling is Plaintiff's § 1983 claim.

[3]

The Sixth Circuit found that a trial court's probable-cause finding does not trigger issue preclusion when the defendant did not have an opportunity (or need) to appeal the initial

(continued...)

4

(4:12CV890)

qualified immunity, claiming that Plaintiff has presented no evidence that would entitle him to

prevail on his § 1983 claim.  ECF No. 53.

Plaintiff filed an opposition brief.  ECF No. 56.  Defendants replied.  ECF No. 57.

Defendant's second motion for summary judgment is ripe for the Court's adjudication.

### III.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required

to file affidavits or other similar materials negating a claim on which its opponent bears the

burden of proof, so long as the movant relies upon the absence of the essential element in the

pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has

failed to establish an essential element of his case upon which he would bear the ultimate burden

of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving

party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely

on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be

resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The

─────────────────

[3](...continued)
decision. *Bradley v. Reno*, 749 F. 3d 553 (6th Cir. 2014).

(4:12CV890)

non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

## IV. Analysis

This lawsuit is brought under 42 U.S.C § 1983.[4] Section 1983 creates no substantive rights; rather, it provides remedies for deprivations of rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985).[5] Plaintiff claims that his clearly established constitutional rights were violated when Defendants wrongfully arrested and imprisoned him, thereby committing an unreasonable seizure against him under the Fourth and Fourteenth Amendments.

---

[4]

42 U.S.C. § 1983 states in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

[5]

The elements of a claim under § 1983 are: (1) the deprivation of a federal right, and (2) the deprivation was committed by one acting under color of state law. *West v. Adkins*, 487 U.S. 42, 48 (1988); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *United of Omaha Life Insurance Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).

6

(4:12CV890)

State Troopers Reno, Dobbins, and Sergeant Timberlake assert the defense of qualified immunity. Qualified immunity attaches generally to shield government officials from liability for civil damages when such officials are "performing discretionary functions . . . *insofar* as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added); *see also Bradley*, 749 F.3d at 558 (same).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity. *Id.* at 201. The Court must consider (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011); *Katz*, 533 U.S. at 201. In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that while the sequence set forth in *Katz* is often appropriate, it is not mandatory. *Id.* at 236. Courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Id.*

Once a defendant raises the qualified immunity defense, the burden is on the plaintiff to demonstrate that the official is not entitled to qualified immunity. Plaintiff meets this burden by alleging facts sufficient to show that the official's act violated clearly established law at the time that it was committed. *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012); *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). Specific to the instant case, when determining whether an officer or agent is entitled to the defense of qualified immunity, a court considers an objective standard of what a reasonable officer would have done. *Anderson v.*

7

(4:12CV890)

*Creighton*, 483 U.S. 635, 641 (1987) (qualified immunity protects "all but the plainly

incompetent or those who knowingly violated the law"); *see also Bradley*, 749 F.3d at 558

("Thanks to qualified immunity, any officer who behaves reasonably–even if, in hindsight,

illegally–has nothing to fear from a lawsuit under § 1983.").

### A. Establishing a Claim of False Arrest

#### 1. Fourth Amendment Requirements

The Fourth Amendment protects individuals from unreasonable searches and seizures and

offers a federal constitutional right to be arrested only upon probable cause. U.S. CONST.

AMEND. IV; *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008)*; Crockett v.*

*Cumberland College*, 316 F.3d 571, 579-80 (6th Cir. 2003). "A false arrest claim under federal

law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the

plaintiff." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir.2005); *see also*

*Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir.2009). "Probable cause to make an arrest exists if

the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a

prudent man in believing that the [arrestee] had committed or was committing an offense." *Pyles*

*v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (internal quotations omitted). "In general, the

existence of probable cause in a § 1983 action presents a jury question, unless there is only one

reasonable determination possible." *Id.* The probable cause standard, however, is imprecise as it

"deals with probabilities and depends on the totality of the circumstances." *Kinlin v. Kline*, 749

F.3d 573, 577 (6th Cir. 2014) (citing *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

8

(4:12CV890)

The Sixth Circuit has instructed that the qualified immunity standard is one of objective reasonableness and that courts should engage in "'a fact-specific, case-by-case' inquiry focused on 'whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene.'" *Marcilis v. Township of Redford*, 693 F.3d 589, 598 (6th Cir. 2012) (quoting *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011)).

### 2. Role of the Court

When analyzing a Fourth Amendment claim, "[i]t is the Court's duty to answer whether the officer's actions were objectively reasonable." *Jones v. Graley*, 2008 WL 343087 *4 (S.D.Ohio Feb. 6, 2008) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007) ("At the summary judgment stage...once we have determined the relevant set of facts and drawn all inferences in favor of the non-moving party to the extent supportable by the record...the reasonableness of [the officer's] actions...is a pure question of law.")); *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). Only when "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury does the jury becomes the final arbiter of a claim of immunity." *Bouggess v. Mattingly*, 482 F.3d 886, 888 (6th Cir. 2007).

Employing this guidance, to overcome the assertion of qualified immunity raised by Defendants, Plaintiff must show that he was arrested without probable cause. In this case, Plaintiff argues that there was insufficient probable cause to arrest him because (1) Plaintiff was not operating or driving or in physical control of the motor vehicle at the time Trooper Reno observed and confronted him and (2) Plaintiff was ordered to do a series of "unscientific and

(4:12CV890)

unwarranted coordination "tests."  ECF No. 4 at 3.  The Court addresses the allegations step-by step to determine whether qualified immunity is appropriate.

### B. Indicia of Impairment as Foundation for Probable Cause Arrest

#### 1.  Prior to the Field Sobriety Tests

Plaintiff argues that Trooper Reno did not have probable cause to arrest him.  An officer's probable cause must derive from an officer's knowledge based on relevant facts and circumstances that a crime has been or is being committed.  *Pyles*, 60 F.3d at 1215.  Here, the facts and circumstances prior to the administration of field sobriety tests only point towards probable cause. Plaintiff admitted to consuming two pitchers of beer and two bottles of beer right before driving to and stopping on an interstate highway's on-ramp on a late Sunday night.  No one else was in the truck at the time, and no evidence in the record or offered by Plaintiff suggests that anyone else operated the vehicle from Truck World to its location on the on-ramp. While technically, Plaintiff had pulled over onto the shoulder of the on-ramp, his truck was *just* inside the white line and close to the highway lanes of traffic.  He had failed to place safety triangles next to the truck and left the engine running and lights on, creating a public safety hazard.  Plaintiff's breath smelled of alcohol.  Although not far from his intended location, Plaintiff testified that he had pulled over onto the on-ramp because he was tired, at least partially because of the alcohol, and because he "did not want things to get out of hand."

Clearly Plaintiff had been operating his truck after consuming a substantial amount of alcohol.  Nevertheless, Plaintiff correctly argues that when a person admits to having consumed alcohol before driving, there may still be insufficient indicia of intoxication to create a reasonable

10

(4:12CV890)

suspicion to justify field sobriety tests, "even when coupled with other additional factors.' *State v. Newsome*, 11th Dist. No. 2012-A-0019, 2012-Ohio-5826, ¶21 (Ohio Ct. App., Ashtabula County Dec. 10, 2012) (admitting "consuming one large beer" and driving, "standing alone, is insufficient to establish reasonable suspicion of intoxication.").  A non-exhaustive list of factors must guide courts in determining whether a police officer had such a reasonable suspicion, such as:

> (1) the time and day of the stop . . . (2) the location of the stop . . . (3) any indicia of erratic driving before the stop that may indicate a lack of coordination . . . (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or more significantly, on the suspect's person or breath; (8) the intensity of that odor . . . (9) the suspect's demeanor . . . (10) any actions by the suspect after the stop that might indicate a lack of coordination . . . and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given." *Id.* (citing *State v. Evans*, 127 Ohio App.3d 56, 63 (1998)).

No single factor is determinative, but a court must rely on the totality of the relevant circumstances in such a fact-intensive inquiry.  Here, given the discussion above–the time at which the events occurred, the location of Plaintiff's truck, the smell of alcohol on Plaintiff's breath, the initial admission of drinking two or three beers (compared to the one beer consumed by the driver in *Newsome)*, followed by an admission of having consumed an additional two pitchers–the indicia of impairment were not *de minimus*.  Without even considering  facts that may be in dispute, Trooper Reno had a reasonable and articulable suspicion to require Plaintiff to perform field sobriety tests.

11

(4:12CV890)

## 2. During the Field Sobriety Tests

Based on Plaintiff's poor performance on the field sobriety tests, and considering the other indicia of impairment mentioned above, Trooper Reno had probable cause to arrest Plaintiff.  Plaintiff swayed during the One-Leg Stand test.  The video also shows Plaintiff swaying on the video as he walked from the driver's side of his truck to Trooper Reno's police car.  Plaintiff admitted to failing to follow Trooper Reno's instructions by performing a walking test after Trooper Reno had instructed him to perform the One-Leg Stand test.  In light of these facts, Trooper Reno had probable cause to arrest Plaintiff.

The state court's finding of probable cause to arrest Plaintiff on the commercial OVI charge and the failure to obey traffic control devices charge is relevant but not conclusive.  "[I]n gauging the reasonableness of an officer's acts, a federal court should of course consider what a state trial court thought of [those same acts.]  A state judge's finding of probable cause suggests, even if it does not prove, that the officer behaved reasonably in thinking he had probable cause." *Bradley*, 749 F.3d at 556.  Because the state court's finding is not dispositive, this Court must conduct its own probable cause inquiry after parties have presented the merits of their arguments.  Even when accepting Plaintiff's version of the facts and viewing the facts in a light most favorable to him, no genuine issue of material fact exists to question whether Trooper Reno had probable cause for Plaintiff's arrest for an OVI charge.  Because only one reasonable

12

(4:12CV890)

determination exists in light of the facts and circumstances, there is no issue to be presented to

the jury.[6]  Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claim.

### 3. Not Relevant to Indicia of Impairment in this Matter

Plaintiff argues that Trooper Reno's failure to observe Plaintiff operating the vehicle is

critical to the determination of probable cause.  There is no requirement that a police officer

observe a person driving under the influence of alcohol in order to arrest him for such a charge.

*See* State v. Finch, 24 Ohio App.3d 38, 40 (12th Dist. 1985) ("it is possible to have a valid arrest

for driving under the influence of alcohol even though the arresting officer has not actually

observed the arrestee operating a vehicle in an erratic or unsafe manner"); *see also* O'Kelly v.

Russell Twp Bd. Of Trustees, 675 F. Supp. 389, 397 (N.D. Ohio 1987) (probable cause for arrest

found where police officer "saw only plaintiff in the vicinity of the car, smelled the odor of

alcohol and noticed plaintiff's problems with balance.").  In Oregon v. Svakovitz, 32 Ohio St.2d

271, 275-76 (1972), the Supreme Court of Ohio held that even though an officer did not witness

---

[6]

There is no need to question any timing issues that may or may not affect the admissibility of
the breathalyzer test in this civil action because Trooper Reno's probable cause for arrest
developed prior to the administration of the test.  Again, the state court's finding of probable
cause for arrest based on the operation of a commercial vehicle in violation of the BAC limit is
relevant but not dispositive to this Court's finding of probable cause.  There are sufficient facts
on the record to provide probable cause for *either* OVI charge.  Similarly, the state court's
decision to suppress the two regular OVI charges has no bearing on the matter before the Court.
In tandem with other Circuits, the Sixth Circuit has stated that "even when a state court
dismissed a charge for lack of probable cause to *prosecute*, a federal court in a subsequent § 1983
action for Fourth Amendment violations should not entertain a § 1983 suit if it finds no genuine
issue of material fact as to probable cause to arrest."  *Manley v. Paramount's Kings Island*, 299
Fed.Appx. 524, *530 (6th Cir. 2008) (emphasis added).

13

(4:12CV890)

the person driving under the influence, evidence at the scene and the person's own admission created probable cause for the arrest.  Here, despite the truck being stationary, Trooper Reno effectively established probable cause to arrest Plaintiff on an OVI charge based on the totality of the circumstances.

Plaintiff also argues that Trooper Reno's command for him to approach the driver's seat was a sort of entrapment that then allowed Trooper Reno to state that Plaintiff was "operating" the vehicle under the OVI statutes.  Plaintiff's positioning in the driver's seat at Trooper Reno's command is not relevant to the finding of probable cause.  There is no *per se* requirement under the statutes.  Similarly, the probable cause standard involved here is one of "fair probability" and not the higher conviction threshold of beyond a reasonable doubt.  *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).  Trooper Reno, like the officer in *Svakovitz*, reasonably concluded from the totality of the circumstances that, earlier in the night, Plaintiff had been operating his truck under the influence of alcohol.  Sufficient facts existed for Trooper Reno to have believed that Plaintiff *had been* operating the truck under the influence of alcohol earlier in the night.

## C.  No Violation of Clearly Established Right by Defendants

Even if a jury accepts the facts as presented by Plaintiff, there would be only one reasonable determination: that the facts supported a finding of probable cause for the arrest, and therefore Trooper Reno did not violate Plaintiff's Fourth Amendment right against unlawful arrests and is covered by qualified immunity.

An official may be held liable if his actions were not "objectively reasonable in light of the legal rules that were 'clearly established' at the time it was taken." *Cochran v. Gilliam*, 656

14

(4:12CV890)

F.3d 300, 306 (6th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  In

this case, however, Trooper Reno's arrest of Plaintiff was objectively reasonable in light of the

Plaintiff's clearly established Fourth Amendment rights.  Therefore, qualified immunity attaches.

Furthermore, while they did not participate in the decision to arrest Plaintiff, Sergeant

Timberlake and Trooper Dobbins also acted reasonably in assisting Trooper Reno at the scene of

the arrest.  There is no evidence to show that their assistance violated Plaintiff's constitutional

rights, especially when Trooper Reno had probable cause to arrest him.

### D.  Defendants Not Barred by Collateral Estoppel

Plaintiff contends that Defendants should be precluded from arguing the existence of

probable cause because when the state court determined that there was no probable cause for the

regular OVI charges, Defendants should have appealed the decision so as to avoid relitigation of

the issue.[7]  In determining whether a prior judgment has preclusive effect on outstanding § 1983

litigation, this Court must employ Ohio's laws on collateral estoppel.  *In re Fondu*, 201 F.3d 693,

703 (6th Cir. 1999).  In order for a prior judgment to have a preclusive effect, the parties from the

prior case must be in privity with the parties in the outstanding litigation and the party against

whom collateral estoppel is being used must have had a full and fair opportunity to litigate the

issue previously.  *See O'Kelly*, 675 F. Supp. at 391-92; *see also Potts v. M.E. Hill, Ohio State

Patrol Trooper*, 77 Fed. Appx. 330 (6th Cir. 2003) (citing *Allen v. McCurry,* 119 U.S. 90, 104

(1979)).

---

[7] Plaintiff's argument appears to give no credence to the state court's determination that probable cause existed for the commercial OVI charge.

(4:12CV890)

Plaintiff's collateral estoppel argument fails.  The state of Ohio prosecuted Plaintiff on the OVI charges, not Defendants.  Defendants are not in privity with the state, and they "never had the opportunity to litigate in the first place."  *Potts*, Fed. Appx. at *4.  Because Defendants were not in privity with the state and because they did not have a full and fair opportunity to litigate the § 1983 issue against them, Plaintiff's collateral estoppel argument is without merit.

### IV.  Conclusion

Viewing Plaintiff's evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there are no genuine issues of material fact and Defendants are entitled to a judgment as a matter of law on Plaintiff's § 1983 claim.

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 53) is granted on the basis of qualified immunity.


IT IS SO ORDERED.


  September 30, 2014                             /s/ Benita Y. Pearson
Date                                          Benita Y. Pearson
                                              United States District Judge

16